UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MANDY RAMSEY, ) | Civil Action No.: 4:22-cv-02337-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **ORDER** |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income(SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for SSI in July 2018, with an amended alleged onset date of July 2, 2018. (Tr. 15). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. Plaintiff and a vocational expert (VE) testified at a hearing in September 2021. The Administrative Law Judge (ALJ) issued an unfavorable decision on October 29, 2021, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 15-28). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in June 2022, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this court

in July 2022. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born in March 1980, and was thirty-eight years old when the application was filed. (Tr. 27).   Plaintiff has no past work. Plaintiff initially alleges disability due to depression, anxiety, scoliosis, kidney tumor, chronic headaches, short temper, difficulty being in crowds, unable to sit/stand for long periods, and liver lesions. (Tr. 52).

**C.     The ALJ's Decision**

In the decision of October 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 15-28):

1. The claimant has not engaged in substantial gainful activity since July 2, 2018, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: pelvic inflammatory disease, scoliosis, bipolar disorder, depression, anxiety, and posttraumatic stress disorder (PTSD) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant cannot climb ladders or be exposed to unprotected heights or dangerous moving machinery; she can perform simple, routine tasks; the jobs should not have fast paced or team dependent production requirements; she can tolerate occasional public contact and occasional changes in the workplace/work methods, and with these restrictions in place, she can attend and focus in two hour increments.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on March 15, 1980 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was

       filed (20 CFR 416.963).

7.     The claimant has at least a high school education (20 CFR 416.964).

8.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since July 2, 2018, the date the application was filed (20 CFR 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in evaluating the statement from NP Anumula.[1] (ECF No. 14 at 13-18). Plaintiff argues the ALJ did not explain why the RFC had no limitations regarding coworkers and supervisors. (ECF No. 14 at 18-22). Plaintiff argues the RFC did not account for a limitation in instructions that was opined by consultants whose opinions were found persuasive by the ALJ. (ECF No. 14 at 22-25). Plaintiff argues Commissioner Berryhill lacked the authority under the FVRA to continue acting as Commissioner and could not have appropriately appointed Plaintiff's ALJ. (ECF No. 14 at 25-30). The Commissioner argues that the ALJ's decision is supported by substantial evidence.

**A.**    **LEGAL FRAMEWORK**

    **1.**    **The Commissioner's Determination–of–Disability Process**

---

[1] The conclusion sentence of this issue states that the ALJ "failed to properly evaluate the opinion of NP Anumula and Ramsey's subjective complaints. Remand is warranted for further evaluation of NP Anumula's opinion." (ECF No. 14 at 18). Plaintiff never cites to the factors for a subjective symptom evaluation in SSR 16-3p.

3

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5)

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of

that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.    ANALYSIS**

**NP Anumula**

Plaintiff argues the ALJ erred in evaluating the statement from NP Anumula.

For applications filed on or after March 27, 2017, such as this action, the regulatory

framework for considering and articulating the value of medical opinions has been changed. *See* 20 C.F.R. § 416.920c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 416.920c (noting that the treating physician rule only applies to claims filed before March 27, 2017). The ALJ is not required to defer to or give any specific weight to medical opinions. 20 C.F.R. § 416.920c(a). Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(b),(c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 416.920c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 416.920c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

The ALJ analyzed two different opinions by NP Anumula. Plaintiff cites page 25[4] of the record so only that opinion will be addressed. Exhibit 24F is a five page physician questionnaire dated July 2021. NP Anumula treated Plaintiff since 2007; only codes were given as diagnosis. (Tr. 1178). Symptoms were chronic lower back pain, chronic abdominal/pelvic pain, fatigue, dizziness, impaired [illegible], and chronic anxiety/depression. (Tr. 1178). Plaintiff had sharp and burning pain. Under the question of describe the treatment, response, and any medication side effects, only "MAR" was written. (Tr. 1178). Plaintiff's pain/symptoms were severe enough to interfere constantly with attention/concentration needed to perform even simple work tasks. (Tr. 1179). Plaintiff was incapable of even low stress jobs; explanation was left empty. (Tr. 1179). Plaintiff could sit/stand/walk less than two hours total in a workday. Plaintiff needed to alternate positions at will. (Tr. 1180). Plaintiff needed unscheduled breaks; how often/long was "as needed." (Tr. 1180). Plaintiff's legs needed to be elevated to hip height as needed. (Tr. 1180). Plaintiff could rarely lift less than 10 pounds. Plaintiff could rarely hold head in static position. Plaintiff could never twist or stoop/bend. (Tr. 1180). Plaintiff had significant limitations with reaching, handling, or fingering. (Tr. 1181). Plaintiff would miss more than four days per month. (Tr. 1181).

The ALJ found NP Anumula's July 2021 questionnaire opinion as unpersuasive:

I find the opinion from the claimant's own medical source, Nalini Anumula, FNP, unpersuasive. Nurse Practitioner Anumula opined that the claimant's pain and other symptoms are severe enough to interfere constantly with her attention and concentration needed to perform even simple work tasks. Nurse Practitioner Anumula also stated that the claimant is incapable of performing even low stress jobs. Nurse Practitioner Anumula also stated that the claimant could sit for 45 minutes at a time and for less than two hours in an eight-hour workday and she could stand for 30 minutes at a time and stand and walk for less than two hours in an

---

[4] The second opinion of NP Anumula is discussed by the ALJ at page 26 of the ALJ's opinion.

eight-hour workday. Nurse Practitioner Anumula also noted that the claimant needs to include periods of walking around during an eight-hour workday, as she needs to walk around for five minutes about every 10 minutes (Ex. 24F/2). Nurse Practitioner Anumula also reported that the claimant needs a job that permits shifting positions from sitting, standing, or walking. Nurse Practitioner Anumula also stated that the claimant sometimes needs to take unscheduled breaks as needed during an eight-hour workday. Nurse Practitioner Anumula also reported that with prolonged sitting, the claimant needs to elevate her legs. Nurse Practitioner Anumula also stated that the claimant does not need to use a cane or other assistive device when engaging in occasional standing or walking. Nurse Practitioner Anumula also reported that the claimant could lift and carry less than 10 pounds rarely. Nurse Practitioner Anumula also reported that the claimant could occasionally look down, turn her head to the right or left, and look up, but could rarely hold her head in a static position. Nurse Practitioner Anumula also stated that the claimant could occasionally crouch and squat, rarely climb ladders or stairs, but never twist, stoop, or bend (Ex. 24F/3). Nurse Practitioner Anumula also stated that the claimant has significant limitations with reaching, handling, and fingering. Specifically, Nurse Practitioner Anumula reported that the claimant could use her hands from grasping, turning, and twisting objects 50% of the time and she could use her fingers for fine manipulation 50% of the time. Nurse Practitioner Anumula also noted that the claimant could use her arms for reaching, including overhead, one to five percent of the time. Finally, Nurse Practitioner Anumula stated that the claimant would be absent from work more than four days per month (Ex. 24F/4). I find this opinion unpersuasive **because it [is] not supported with explanations or by Nurse Practitioner Anumula's own treatment notes, nor is it consistent with the other medical evidence in the record** (Ex. 2F; 6F; 7F; 11F; 13F; 14F; 15F; 16F; 17F; 19F; 22F; 23F; 24F; 25F; 28F).

(Tr. 25).

The ALJ gave three reasons for finding the opinion unpersuasive: 1) the opinion was not supported with explanations; 2) the opinion was not supported by the treating provider's own treatment notes; and 3) the opinion was not consistent with the other medical evidence in the record. The ALJ cited to the following Exhibits in making this finding: Exhibits 2F, emergency room records from 2016-July 2018; 6F, Rosa Clark Medical Clinic notes from two months in 2018; 7F, Dr. Holt's November 2018 consultative exam with no functional limits opined; 11F, multiple January 2019 emergency room visits; 13F, January 2020 emergency room visits; 14F,

9

February/March 2019 ob/gyn records; 15F, urgent care in January/April 2019 and imaging; 16F, March 2020 ob/gyn visit; 17F, February 2020 colonoscopy; 19F, Feb. 2019-January 2020 primary care notes; 22F, January 2020 NP Perry notes; 23F, 15 pages primary care notes/sick visits July 2020-November 2020; 24F, the opinion at issue; 25F, <u>NP Anumula's own notes November 2020-June 2021, 183 pages</u>; and 28F, October 2020-March 2021 urologist notes. (Tr. 25).

     As to the first reason, reviewing NP Anumula's opinions themselves, explanations were not given even where there were blanks on the form for explanations. Substantial evidence supports the ALJ's first reason for finding the opinion unpersuasive.

     As to the ALJ's second reason, which was that NP Anumula's own treatment notes did not support the opinion, the ALJ cited the treatment notes at Exhibit 25F, 183 pages. (Tr. 25). Also reviewing the ALJ's opinion as a whole, various specific pages of 25F were cited by the ALJ throughout the ALJ's opinion, noting normal mental status exams, normal CT, and multiple treatment notes in 2021 noting stable on medication. (Tr. 18-26). Reviewing Exhibit 25F, eight months of visits, in January 2021, Plaintiff had normal mood/affect but "looks anxious." (Tr. 1185). Labs were ordered; medications were changed. It was noted her abdominal pain improved significantly after surgeries. A Holter monitor was ordered for heart palpitations. (Tr. 1186). After the Holter monitor results, Plaintiff needed a full cardiac workup. (Tr. 1190). In March 2021, Plaintiff was seen by NP Anumula; Plaintiff had not brought her medication bottles and was warned medication refills would not be given in the future. (Tr. 1199). In April 2021, Plaintiff reported she last took clonazepam the night before; however, urine screen was negative for clonazepam. (Tr. 1201). Plaintiff reported the medication "very helps" her anxiety and insomnia. Plaintiff was stable for depression, bipolar, and anxiety on Abilify, hydroxyzine, Cymbalta, and Trileptal. (Tr. 1201).

Upon exam, Plaintiff had abdominal pain with palpation, but another doctor followed this ailment. (Tr. 1203). Plaintiff had normal mood/affect but "looks anxious." (Tr. 1203). Plaintiff reported her chest pain was associated with anxiety and she would consider a stress test or stress echo at another time. (Tr. 1204). In May 2021, Plaintiff was seen by NP Anumula, it was noted the last urine drug screen was inconsistent because her medication was lost to a house fire. (Tr. 1207). Now, Plaintiff reported her chest pain was GERD related. Plaintiff's anxiety was stable with medication. (Tr. 1207). Exam was normal, except for positive abdominal pain with palpation and normal mood/affect but looks anxious. (Tr. 1209). Chest pain had "significantly improved" since taking a betablocker. (Tr. 1210). Plaintiff was compliant with medications. In June 2021, Plaintiff was seen by NP Anumula; Plaintiff reported her chest pain had resolved since starting the betablocker. An echocardiogram was normal. Plaintiff's main concern had now changed to abdominal pain. Depression and anxiety were stable on current medication regimen. (Tr. 1212). Plaintiff was referred to GI and GYN for her abdominal pain. (Tr. 1212). Exam was similar to the prior month. (Tr. 1215). GERD symptoms were improved by medication. (Tr. 1216). A CT was ordered. A June 2021 ultrasound showed normal abdomen, except mild atrophy of left kidney; renal ultrasound was normal. (Tr. 1306, 1310). In July 2021, a CT had no acute findings. (Tr. 1354)  In July 2021, Plaintiff was seen by NP ANumula; it is noted disability paperwork was completed at this visit. (Tr. 1219). Plaintiff reported social anxiety. (Tr. 1219). Exam was similar to the prior month. (Tr. 1222). Plaintiff was stable on medications. (Tr. 1223). In July 2021 with NP Merck, abdominal and psych exams were normal. (Tr. 1227). Reviewing the multiple limitations opined by NP Anumula in several areas and the notes as discussed above, the ALJ supported this reason for finding the opinion unpersuasive with substantial evidence.

11

Plaintiff argues the ALJ erred by citing the evidence as a whole without an explanation. (ECF No. 16 at 2). The first two reasons the ALJ gave for finding the opinion unpersuasive are significant and the ALJ supported them with citation to substantial evidence; while further explanation might have been helpful as to the third reason, reviewing the ALJ's opinion as a whole, the ALJ's citations as to the third reason do not prohibit the court from completing meaningful review of the ALJ's finding of NP Anumula's opinion as unpersuasive. "We can conduct a meaningful review without making an administrative law judge repeat himself."*Brill v. Saul*, 860 Fed. Appx. 256, 262 (4th Cir. 2021). Specific pages of Exhibits 2F, 6F(which showed normal gaits, range of motion, and strength), 7F(the consultant's exam is thoroughly discussed by the ALJ at Tr. 23); 11F(abdomen records are discussed at Tr. 22); 13F, 14F, 16F, 17F, 19F(normal exams, Tr. 18-19), 22F, 23F( Tr. 18-19, 24, ALJ discussing treatment of mental impairments with stability on regimen shown), and 28F are cited and discussed by the ALJ in the opinion as a whole. The ALJ utilized the record as a whole in evaluating the opinion evidence. "Notably, ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision." *Coe v. Kijakazi*, No. 5:22-CV-226-KDW, 2023 WL 554119, at *9 (D.S.C. Jan. 27, 2023)(collecting cases from multiple circuit courts of appeal). Indeed, "the ALJ need only review medical evidence once in his opinion." *McCartney v. Apfel*, 28 Fed. Appx. 277, 279 (4th Cir. 2002)); *Caryn D.M. v. Kijakazi*, 2022 WL 4544737, at *7 (E.D. Va. June 8, 2022), *report and recommendation adopted*, 2022 WL 4541636 (E.D. Va. Sept. 28, 2022)("Although the ALJ did not contemporaneously provide a detailed explanation about how the record was inconsistent with Dr. Squires' opinion, reading the ALJ's

decision as a whole, the ALJ clearly and sufficiently pointed out inconsistencies between Dr. Squires' opinion and the record.")

As explained above, the ALJ's discussion of the medical opinions allows for meaningful judicial review, particularly when considered as part of the decision as a whole. Under the deferential standard of review applicable here, substantial evidence is not a high threshold. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The ALJ here performed the analysis under the applicable regulatory scheme and considered the factors most important to determining the persuasiveness of opinions from NP ANumula. The ALJ cited to the record to support this finding and followed the applicable regulatory law.

## RFC: Interactions

Plaintiff argues the ALJ did not explain why the RFC had no limitation regarding interactions with coworkers and supervisors. (ECF No. 14 at 18-22).

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal

13

requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

First, no Fourth Circuit Court of Appeals decision has extended *Mascio*'s reasoning[5] to "moderate" limitations in "interacting with others." There is no "conversion" rule or required accommodation in the RFC when a "moderate" <u>social</u> limitation is found at an earlier step; the normal RFC regulations still apply— that the ALJ must support the RFC findings with substantial evidence.

At earlier steps, the ALJ found Plaintiff had moderate limitations in interacting with others based on Plaintiff's reports of short temper and difficulty being in crowds. (Tr. 18). The ALJ noted treatment notes indicated Plaintiff was calm and cooperative and mood/affect were normal. (Tr. 18-19). The social RFC limits found by the ALJ here were no team dependent production requirements and can tolerate occasional public contact. (Tr. 20). The ALJ noted that the limitations in the paragraph B analysis are not the RFC determination. (Tr. 20). The ALJ discussed Plaintiff's own report that she spends time with others and does not have any problems getting along with others and Plaintiff's testimony of road rage. (Tr. 21). In the RFC narrative, the ALJ summarized mental health treatment where Plaintiff's mood was stable and Plaintiff examined as calm and cooperative. (Tr. 23). Plaintiff had some depressed/anxious mood/affect early on in treatment, but in 2019 and 2020,

---

[5] As to a severe impairment, *Mascio v. Colvin,* 780 F.3d 632, 638 (4th Cir. 2015) found an ALJ should provide an explanation in the RFC narrative where an earlier finding of a "moderate limitation in concentration, persistence, or pace" does not translate into a limitation within the RFC finding.

Plaintiff examined with normal mood/affect. (Tr. 24). In 2021, Plaintiff was stable on medication and had a normal mood/affect but "looked anxious." (Tr. 24). The ALJ found the psychological consultants' opinions as persuasive and noted they opined "claimant is able to respond appropriately to supervision, coworkers, and usual work situations but would perform best in settings that do not require ongoing interaction." (Tr. 25). The ALJ found Dr. Hammond's opinion partially persuasive and noted Dr. Hammond had opined "claimant related in a pleasant and cooperative manner that should be adequate for getting along with coworkers or supervisors." (Tr. 26). The ALJ found NP Anumula's opinion that Plaintiff could only occasionally relate to coworkers and rarely interact with supervisors as unpersuasive, noting the treatment records of normal exams and stable on medication over several years. (Tr. 26). The ALJ concluded finding the record did not sustain Plaintiff's allegations of limitations and the limitations supported by the evidence were contained in the RFC. (Tr. 26).

The ALJ properly considered the record and cited to substantial evidence to support the RFC found. Where there are two reasonable views of the evidence, the responsibility falls on the ALJ and it is not the court's duty to decide between them. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The court cannot say that a reasonable mind would not reach this RFC in view of the totality of the evidence. Based upon the foregoing, substantial evidence supports the ALJ's RFC.

**FVRA and Constitutionally Valid SSA proceeding**

Plaintiff argues Commissioner Berryhill lacked the authority under the FVRA to continue acting as Commissioner and could not have appropriately appointed the ALJ who decided Plaintiff's case. (ECF No. 14 at 25-30). The essential question of this issue is: if an acting official's 210-day period of service expires, and the President nominates another for the office, does the Federal

Vacancy Reform Act (FVRA) allow the acting official(Berryhill) to resume another period of acting service while the nomination(Saul) is pending? The answer is yes.

Plaintiff argues[6] that the former Commissioner Berryhill lacked authority under the FVRA to ratify the appointment of ALJs in 2018. (ECF No. 19 at 22). Plaintiff argues that if ALJ Paschall was not properly appointed,[8] then the ALJ lacked authority to decide Plaintiff's disability in 2021. Plaintiff seeks a remand for a hearing before a "properly appointed" ALJ. Defendant asserts Berryhill was validly serving when she approved the appointment of ALJ Paschall. (ECF No. 15 at 22-34).

The FVRA is found at 5 U.S.C. § 3345.[9] The FVRA provides three avenues for designation of an acting official: by default, § 3345(a)(1) subject to limitations within § 3346; another senate-confirmed official by presidential designation, § 3345(a)(2); or an employee within the same agency that satisfies tenure and salary requirements, § 3345(a)(3).

As for the running of § 3346 time limits, the 210 days in § 3346(a)(1) ended in November 2017.[10] On April 17, 2018, President Trump nominated Saul to be the Commissioner. Defendant

---

[6] There was likely no requirement for Plaintiff to raise and exhaust this issue below. *See e.g. Carr v. Saul*, 124 S. Ct. 1352 (2021)(no issue-exhaustion requirement on Appointments Clause claims).

[8] After concerns due to *Lucia v. SEC*, 138 S. Ct. 2044 (2018), Berryhill issued an agency-wide ratification and reappointment of ALJs. *See* SSR 19-1p.

[9] However, there are also vacancy statutes specific to agencies. 42 U.S.C. § 902(b)(4)("The Deputy Commissioner shall be Acting Commissioner of the Administration during the absence or disability of the Commissioner and, unless the President designates another officer of the Government as Acting Commissioner, in the event of a vacancy in the office of the Commissioner."). Procedurally distinct, current Acting Commissioner Kijakazi is serving under position-specific authority in accordance with § 3347(a)(1) because she was designated under 41 U.S.C. § 902(b)(4). The time limits under the FVRA only apply to those serving pursuant to § 3345, not §3347.

[10] November 16, 2017 is 300 days from January 21, 2017; although that is 90 days more than the 210-day period, that 90-day extension is provided in 5 U.S.C. § 3349a(b) for circumstances where a vacancy arises at the beginning of a new President's term.

argues while Saul's nomination was pending, Berryhill properly resumed service under § 3346(a)(2). The plain language[11] of § 3346(a)(2) allows Berryhill under the FVRA to serve during the pendency of the nomination of Saul even when that nomination is after the initial 210-day period. There is no statutory requirement in the FVRA that the nomination(Saul) is required to be during the initial 210 days of the acting official(Berryhill).

The outlier case upon which Plaintiff relies, *Brian T. D. v. Kijakazi*, No. 19-CV-2542 (DTS), 2022 WL 179540, at *16 (D. Minn. Jan. 20, 2022) was recently reversed by the Eighth Circuit Court of Appeals, *Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023), which found Berryhill was properly serving as Acting Commissioner when she ratified the appointment of ALJs including the one who issued the decision in that case. Further, the Fourth Circuit Court of Appeals in April 2023 issued a published opinion on this issue, finding: "An acting officer may serve while a nomination is pending in accordance with § 3346(a)(2) regardless of whether her service under § 3346(a)(1) expired before the nomination was submitted. Berryhill therefore was properly serving as SSA Acting Commissioner when she ratified the ALJs' appointments." *Rush v. Kijakazi*, 65 F.4th 114, 123 (4th Cir. 2023). There is no error here as to Plaintiff's arguments as to the authority of ALJ Paschall.

---

[11] (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office--
    (1) for no longer than 210 days beginning on the date the vacancy occurs; **or**
    (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.
    (b)(1) If the first nomination for the office is rejected by the Senate, withdrawn, or returned to the President by the Senate, the person may continue to serve as the acting officer for no more than 210 days after the date of such rejection, withdrawal, or return.
    (2) Notwithstanding paragraph (1), if a second nomination for the office is submitted to the Senate after the rejection, withdrawal, or return of the first nomination, the person serving as the acting officer may continue to serve-
    (A) until the second nomination is confirmed; or
    (B) for no more than 210 days after the second nomination is rejected, withdrawn, or returned.
    (c) If a vacancy occurs during an adjournment of the Congress sine die, the 210-day period under subsection (a) shall begin on the date that the Senate first reconvenes.

**RFC: Instructions/consulting opinions**

Plaintiff argues the RFC did not account for a limitation in instructions that was opined by consultants whose opinions were found persuasive by the ALJ. (ECF No. 14 at 22-25). Plaintiff argues if the ALJ had included the opined limitation regarding instructions that the ALJ had found persuasive, that the Step Five jobs opined by the VE would be eliminated. (ECF No. 14 at 25).

The pertinent part of the RFC was "simple, routine tasks, the jobs should not have fast paced or team dependent production requirements." (Tr. 20). All Step Five jobs found were reasoning level two which requires: "carry out detailed but uninvolved written or oral instructions." (Tr. 27); DOT# 319.464-014, 1991 WL 672766, Vending-machine Attendant; DOT#222.687-014, 1991 WL 672131, Garment Sorter; DOT#209.587-034, 1991 WL 671802, Marker. The opinions the ALJ found supported and consistent with the evidence and thus, persuasive were: "able to understand and remember simple instructions but could not understand and remember detailed instructions." (Tr. 60-61). While an ALJ does not have to convert every functional limitation opined from an opinion the ALJ found persuasive, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, * 7.  Where the ALJ finds consulting non-examining agency opinions as persuasive, supported by explanations, and consistent with treatment notes and examinations of record, it is difficult to presuppose in the first instance a reason why an opined functional limitation was not included in the RFC. It is the ALJ's duty to explain such in the first place and that explanation as to "instructions" is lacking here. However, where there is error, an automatic remand is not created; there must be outcome determinative error to support a remand. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1999); *Mickles v. Shalala*, 29 F.3d 918, 921

(4th Cir. 1994). The persuasive opinions were "could not understand and remember detailed instructions;" if included in the RFC because the evidence was consistent/supportive of such a limitation, such limitation may conflict with all Step Five jobs opined, which required carrying out detailed but uninvolved instructions. It is not clear whether substantial evidence supports the RFC and the RFC explanation. This issue is the basis of the court's remand. While the court found that substantial evidence supports the instant ALJ's findings as to the other issues briefed and those issues are not the basis for remand, when the instant ALJ's findings are vacated by this remand, the ALJ remains free to consider all the allegations of error in Plaintiff's brief.

### III. CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), it is ordered that the Commissioner's decision is reversed and this matter is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

May 30, 2023
Florence, South Carolina

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge